United States District Court
Southern District of Texas
**ENTERED**
August 17, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ZENITH SURGERY CENTER, PLLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-3867 |
| | § | |
| TE CONNECTIVITY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This dispute arises out of the denial and allegedly insufficient reimbursement of healthcare services that the plaintiff, Zenith Surgery Center, PLLC, provided to a participant in TE Connectivity's health benefits plan. (Docket Entry No. 1). TE Connectivity has moved to dismiss, arguing, among other things, that Zenith lacks statutory standing to bring claims under ERISA. (Docket Entry No. 6). Based on the pleadings, the motion, and the applicable law, the court grants in part and denies in part the motion to dismiss. The reasons for this ruling are below.

## I. Background

Zenith is an ambulatory surgery center located in the Woodlands, Texas. (Docket Entry No. 1 ¶ 8). Steven Kelly, a TE Connectivity employee, had insurance coverage under a health benefits plan administered by TE Connectivity. (*Id.*). After receiving a serious medical diagnosis and confirming coverage under the Plan, Kelly sought treatment at Zenith's facilities. (*Id.* ¶ 9). Clinicians verified Kelly's insured status at intake. (*Id.*). TE Connectivity "held itself out to be the responsible payor for the medically necessary services provided to" Kelly. (*Id.*). Upon treatment, Kelly assigned Zenith the rights to his Plan benefits. (*Id.* ¶ 8). Zenith provided Kelly healthcare between June 9 and December 29, 2020. (*Id.* ¶ 9).

Zenith alleges that TE Connectivity has not complied with the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"). Zenith alleges that TE Connectivity improperly processed the claims and refused payment without cause.[1] (*Id.* ¶ 11). Zenith alleges that it diligently submitted the necessary claims within the time limits under a federal government extension (due to the COVID-19 pandemic), but that TE Connectivity disregarded the modified deadlines and "wrongfully treated" its claims as untimely, among other reasons that TE Connectivity has denied payment for the claims. (*Id.* ¶ 12). Zenith alleges that it has received no money from TE Connectivity as of the date the complaint was filed and that it is currently owed $748,221.19 in outstanding benefits. (*Id.* ¶ 13).

Based on these facts, Zenith brings five causes of action: (1) an ERISA claim for benefits under 29 U.S.C. § 1132(a)(1)(B); (2) an ERISA breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3); (3) a breach of contract claim; (4) a promissory estoppel claim; and (5) a quantum meruit claim. (*Id.* ¶¶ 15–34). In response, TE Connectivity has moved to dismiss. (Docket Entry No. 6). TE Connectivity argues that Zenith lacks statutory standing to bring the ERISA claims because the Plan prohibits assigning benefits; that Zenith does not plausibly allege entitlement to Plan benefits because the complaint contains no specific allegations about the type of services provided or the Plan terms allegedly violated; that precedent precludes a fiduciary breach claim under ERISA § 502(a)(3) when the alleged harm can be remedied by the recovery of Plan benefits; and that ERISA preempts the state common law claims. (*Id.* at 6–7).

## II. The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a),

[1] According to the motion to dismiss (but not alleged in the complaint), TE Connectivity is the "Plan Administrator" and Independence BlueCross is the "Claims Administrator." (Docket Entry No. 6 at 8).

which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co*., 920 F.3d 890, 900 (5th Cir. 2019).

## III. Analysis

### A. The ERISA Claims

#### 1. The Anti-Assignment Clause

TE Connectivity's Plan contains an anti-assignment clause. (Docket Entry No. 6 at 9). The clause provides:

> The right of a member to receive payment for a Covered Service described in this benefits booklet is not assignable, except to the extent required by law, nor may benefits described in this booklet be transferred either before or after Covered Services are rendered. Any (direct or indirect) attempt to accomplish such an assignment shall be null and void.

(Docket Entry No. 6-3 at 3).[2] TE Connectivity argues that the ERISA claims must be dismissed because the anti-assignment clause prevents Zenith from having statutory standing to pursue these claims.[3] (Docket Entry No. 6 at 10). In response, Zenith argues that TE Connectivity is estopped from enforcing the anti-assignment clause because before Zenith provided the surgical services, it contacted TE Connectivity to verify Kelly's coverage for those services, received assurances that he was covered, provided the medically necessary surgical services in reliance on those assurances, and TE Connectivity never mentioned the anti-assignment clause. (Docket Entry No. 9 ¶ 11). Zenith relies heavily on *Angelina Emergency Medical Associates PA v. Blue Cross and Blue Shield*

---

[2] This court may take judicial notice of documents attached to the motion to dismiss that are central to the claims and referenced in the complaint. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[3] TE Connectivity argues that, under *Cell Science Systems Corp. v. Louisiana Health Care Services*, 804 F. App'x 260 (5th Cir. 2020), it is "[c]ritical[]" that it argues only that the anti-assignment clause precludes Zenith's standing to sue, not that it is relying on the anti-assignment clause as a basis to affirm the benefits decision. (Docket Entry No. 7–8). *Angelina Emergency*, however—the subsequent, and binding, Fifth Circuit case—does not appear to turn on so fine a distinction. In that case, the Fifth Circuit considered the broader question of whether a plan could "enforc[e]" an anti-assignment clause it had not raised until litigation; the pre-suit administrative appeals in that case were denied for reasons other than the anti-assignment clauses, to the extent any information was provided as to the basis for denying the appeal. 156 F.4th at 512–13, 520. The overall holding of *Angelina Emergency* as it applies *Hermann* estoppel is simply that "a plan could not wait years to assert an anti-assignment clause that the third party bearing the assignment had no way of learning about." *Angelina Emergency*, 156 F.4th at 519.

*of Alabama*, 156 F.4th 505 (5th Cir. 2025) for support. (*Id.* ¶¶ 13–16). Zenith also argues that determining the issue of estoppel at this early stage is improper. (*Id.* ¶¶ 17–18).

The court agrees that the anti-assignment clause does not warrant dismissal at this time.[4] In a similar case brought by Zenith, this court denied a motion to dismiss after the publication of *Angelina Emergency* and ordered jurisdictional discovery. *See Zenith Surgery Ctr., PLLC v. Occidental Petrol. Corp.*, No. 4:24-cv-3165, Docket Entry No. 30 (S.D. Tex. Aug. 25, 2025). The court's subsequent Memorandum and Opinion on the summary judgment motion in that case clarified that the issue of estoppel for anti-assignment clauses after *Angelina Emergency* is a fact-bound inquiry that requires a full record, including evidence on the parties' course of dealings.

Both before and after *Angelina Emergency*, courts have found that whether an anti-assignment clause bars ERISA claims is more appropriate for resolution on summary judgment than a motion to dismiss. *See, e.g.*, *id.*; *Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, Civ. Action No. H-15-0297, 2015 WL 3756492, at *2 (S.D. Tex. June 16, 2015) ("It is necessary and appropriate in this case to consider the effect of the anti-assignment clauses and the waiver and estoppel issues on a Motion for Summary Judgment when the plans, the assignments, and evidence regarding the parties' dealings are in the record."); *Houston Home Dialysis v. Blue Cross & Blue Shield of Tex.*, Civ. Action No. H-17-2095, 2018 WL 5249996, at *7 (S.D. Tex. Oct. 22, 2018) (denying a motion to dismiss on the issue of an anti-assignment clause "so that the parties

[4] In its reply brief, TE Connectivity argues that if Zenith "submitted benefit claims and appeals to Independence as required by the Plan, then Plaintiff does not have an estoppel defense against Defendant." (Docket Entry No. 11 at 12). As an initial matter, TE Connectivity did not raise this argument in its motion to dismiss and only raised it in its reply brief. This court does not consider arguments raised for the first time in a reply brief. *See, e.g.*, *Allstate Fire & Cas. Ins. Co. v. Rodriguez*, No. 3:24-CV-1013-D, 2024 WL 4771414, at *4 n.3 (N.D. Tex. Nov. 13, 2024). Regardless, the out-of-circuit cases it cites in support concern waiver, not estoppel. Those concepts are different in the Fifth Circuit. *See Houston Home Dialysis v. Blue Cross & Blue Shield of Tex.*, Civ. Action No. H-17-2095, 2018 WL 5249996, at *5–6 (S.D. Tex. Oct. 22, 2018). TE Connectivity has provided no basis for this court to conclude (at this stage) that it should not be estopped from enforcing the anti-assignment clause.

may raise this issue at summary judgment or at trial, on a more complete record"); *see also Encompass Off. Sols., Inc. v. Conn. Gen. Life Ins. Co.*, No. 3:11-CV-02487-L, 2017 WL 3268034, at *12–13 (N.D. Tex. July 31, 2017) (reviewing an argument that estoppel precluded enforcement of the anti-assignment clause at the summary judgment stage).

Taking the facts in the amended complaint as true and reviewing the arguments that TE Connectivity now makes, Zenith called TE Connectivity to verify coverage, TE Connectivity did not mention the anti-assignment clause, Zenith provided medical services, and TE Connectivity is now relying in part on the undisclosed anti-assignment clause to prevent Zenith from pursuing its claims. As noted above, this court has allowed similar allegations to proceed to jurisdictional discovery based on the Fifth Circuit's guidance in *Angelina Emergency*. This court has also previously rejected the argument (that TE Connectivity raises in its reply brief) that Zenith's failure to allege that TE Connectivity knew of the assignment is sufficient to prevent this case from proceeding to summary judgment. *See Houston Home Dialysis*, 2018 WL 5249996, at *6–7.

The plaintiffs have plausibly pleaded that they have standing despite the anti-assignment clause. As Zenith asserts, discovery is needed into the parties' communications, TE Connectivity's agents' representations to Zenith, and Zenith's reliance on those representations. (Docket Entry No. 9 ¶ 18). Discovery is also needed into what Zenith communicated to TE Connectivity about the assignment. *See, e.g.*, *Houston Home Dialysis*, 2018 WL 5249996, at *7. The court will determine the issue of estoppel either on a motion for summary judgment or at trial.

**2. Plausible Pleading**

TE Connectivity next argues that the court should dismiss the ERISA claims because the complaint does not provide a basis for the court to conclude that Zenith is due benefits under the Plan terms. (Docket Entry No. 6 at 11). TE Connectivity argues that because the complaint lacks allegations about the medical treatment provided and the specific plan provisions at issue, Zenith

has not plausibly pleaded its claims. (*Id.* at 12). In response, Zenith argues that under Fifth Circuit case law, Zenith does not have to plead the specific facts that TE Connectivity identifies to proceed past the motion to dismiss stage. (Docket Entry No. 9 ¶ 20).

The ERISA claims are plausibly pleaded. The Fifth Circuit has made clear that "ERISA plaintiffs should not be held to an excessively burdensome pleading standard that requires them to identify particular plan provisions in ERISA contexts when it may be extremely difficult for them to access such plan provisions." *Innova Hosp. San Antonio, Limited P'Ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 729 (5th Cir. 2018). Rather, "improper reimbursement based on representative plan provisions . . . may be sufficient to show plausibility under *Twombly* and *Iqbal* when there are enough other factual allegations in the complaint to allow a court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.*

Zenith has alleged that it provided services to patients covered by TE Connectivity's plan, that it verified coverage and the Zenith would be paid a "reasonable amount" before providing services, that it received an assignment of benefits, that it provided treatment worth $748,221.19 to a plan participant between June 9 and December 29, 2020, that it timely submitted claims to TE Connectivity under the relevant COVID protocols, that TE Connectivity failed to treat the claims as timely filed, and that TE Connectivity otherwise employed various improper pretexts to deny the claims despite Zenith promptly and adequately providing the required paperwork. Whether TE Connectivity complied with Plan standards "is necessarily a factually intensive inquiry that is inappropriate for resolution via a motion to dismiss." *Tex. Gen. Hosp., LP v. United Healthcare Servs., Inc.*, No. 3:15-CV-02096-M, 2016 WL 3541828, at *5 (N.D. Tex. June 28, 2016); *see also Price v. Life Ins. Co. of N. Am.*, Civ. Action No. H-18-3900, 2019 WL 2716537, at *3–4 (S.D. Tex. June 28, 2019); *Lone Star 24 Hr ER Facility, LLC v. Blue Cross & Blue Shield of Tex.*, No. SA-22-CV-01090-JKP, 2023 WL 5729957, at *8 (W.D. Tex. Sep. 5, 2023).

The court concludes that the ERISA claims are plausibly pleaded.

**3. Exhaustion**

"A claimant who is denied benefits under an ERISA plan must exhaust all administrative remedies afforded by the plan before instituting litigation for recovery of benefits." *Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 256 (5th Cir. 2005). ERISA exhaustion is not a prerequisite to federal court jurisdiction. *Galvan v. SBC Pension Benefit Plan*, 204 F. App'x 335, 338 (5th Cir. 2006) (per curiam). ERISA benefits claims require exhaustion, while fiduciary duty claims do not. *Id.* at 338–39. "In the Fifth Circuit, ERISA exhaustion is an affirmative defense." *Sanat V. Sanghani, M.D., LLC v. United Healthcare Servs., Inc.*, Civ. Action No. 1:15-CV-02887, 2017 WL 1130085, at *2 (W.D. La. Mar. 6, 2017). Exhaustion of remedies "is not a jurisdictional bar," *Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc.*, Civ. Action No. H-09-0546, 2010 WL 565283, at *2 (S.D. Tex. Feb. 17, 2010), and a plaintiff does not need to plead that they exhausted administrative remedies, *see Wilson v. Kimberly-Clark Corp.*, 254 F. App'x 280, 287 (5th Cir. 2007) (stating, in an ERISA case, that "[a]lthough Plaintiffs failed to plead that they exhausted administrative remedies, they need not have done so here").

The court denies the motion to dismiss based on failure to exhaust. TE Connectivity argues that because the complaint does not affirmatively allege that Zenith administratively appealed any denied claim, Zenith failed to properly exhaust its administrative remedies and so dismissal is appropriate. (Docket Entry No. 6 at 14–15 ("[T]he Complaint does not even remotely suggest that Plaintiff submitted a single appeal of any denied claim.")); *see also Ford v. Freemen*, 388 F. Supp. 3d 692, 709 (N.D. Tex. 2019) (noting that dismissal is proper for failure to exhaust when such failure "is apparent from the face of the complaint"). "A complaint alleging an ERISA claim is . . . 'not subject to dismissal under Rule 12(b)(6) because it fails to allege facts disproving a possible affirmative defense of exhaustion,'" *Milton v. Blue Cross Blue Shield of Tex., Inc.*, Civ.

Action No. 16-458, 2016 WL 2926846, at *5 n.29 (E.D. Ka. May 19, 2016) (quoting *Am. Surgical Assistants, Inc.*, 2010 WL 565283, at *2), although an exception "may apply if the plaintiff has alleged facts plainly indicating that an affirmative defense does apply," *Am. Surgical Assistants, Inc.*, 2010 WL 565283, at *2.

To the extent that TE Connectivity's argument is functionally that the complaint is silent as to Zenith's filing of administrative appeals, Fifth Circuit precedent is clear that silence on exhaustion is not a basis to grant a motion to dismiss on the grounds of exhaustion. *See Wilson*, 254 F. App'x at 287; *see, e.g.*, *Gunter v. XTO Energy*, Civ. Action No. H-25-6356, 2026 WL 1138367, at *4 n.5 (S.D. Tex. Apr. 21, 2026). And as to disputes about whether Zenith properly followed Plan procedure and whether an exception for deemed exhaustion applies, the court concludes that the issue, as presented, is better resolved at summary judgment. Most of the cases that TE Connectivity cites in support of dismissing on the ground of exhaustion took place at the summary judgment stage with a full record. *See, e.g.*, *Bushy Creek Family Hosp. LLC v. Blue Cross Blue Shield of Tex.*, Case No. 1:22-CV-00464-JRN, 2024 WL 2789389, at *3 (W.D. Tex. May 30, 2024), *report and recommendation adopted*, 2024 WL 3074393 (W.D. Tex. June 20, 2024); *Kirkindoll v. Nat'l Credit Union Administrative Bd.*, No. 3:11-CV-1921-D, 2014 WL 7178005, at *13 (N.D. Tex. Dec. 17, 2014); *Mission Toxicology, LLC v. UnitedHealthcare Ins. Co.*, 499 F. Supp. 3d 338, 345 (W.D. Tex. 2020).

The court denies the motion to dismiss on the ground of failure to exhaust.

**4. Duplicative Pleading**

TE Connectivity next argues that the claim for breach of fiduciary duty should be dismissed because it is duplicative of the claim for plan benefits. (Docket Entry No. 6 at 15). The court agrees. While plaintiffs are typically allowed to plead in the alternative, that does not apply to ERISA benefits claims and ERISA breach of fiduciary duty claims under binding precedent. *See*

*Flores v. Hartford Life & Accident Ins. Co.*, Civ. Action No. 3:23-CV-2687-X, 2025 WL 346934, at *2 (N.D. Tex. Jan. 30, 2025). In the Fifth Circuit, it is one or the other, not both.

In *Innova Hospital of San Antonio, Limited Partnership v. Blue Cross and Blue Shield of Georgia, Inc.*, the Fifth Circuit upheld the district court's dismissal of a duplicative breach of fiduciary duty claim, holding that because the hospital "ha[d] an adequate mechanism for redress under § 1123(a)(1)(B)," it could "not simultaneously plead claims under § 1132(a)(3)." 892 F.3d 719, 733 (5th Cir. 2018). It did not matter that the plaintiff requested equitable relief in the form of a surcharge in the alternative; because the "essence of its complaint is that the Insurers failed to reimburse the hospital," it could not maintain both kinds of claims.

"Since the Fifth Circuit's decision in *Innova*, district courts in this circuit have consistently held that plaintiffs may not plead duplicative [§ 1123](a)(1)(B) and [§1123](a)(3) claims, the latter of which often stem from an alleged breach of fiduciary duty." *Moody v. Nat'l W. Life Ins. Co.*, No. 1:25-CV-00743, 2026 WL 896223, at *5 (W.D. Tex. Mar. 26, 2026) (collecting cases); *see also Pederson v. Kinder Morgan Inc.*, 622 F. Supp. 3d 520, 533 (S.D. Tex. 2022) ("Since *Innova*, district courts in the Fifth Circuit have consistently held that plaintiffs may not plead duplicative § 502(a)(1)(B) and § 502(a)(3) claims.").

A review of the claims demonstrates that the two ERISA claims are duplicative. Because the two claims "ha[ve] the same underlying injury: the alleged failure to adequately pay benefits," the breach of fiduciary duty claim may not proceed. *See Moody*, 2026 WL 896223, at *5; *see also Grand Parkway Surgery Ctr., LLC* 2015 WL 3756492, at *5–6 (concluding that because "it is clear from the Complaint that the claim for [ERISA] benefits is the focus and 'predominate cause of action' in the lawsuit," the duplicative breach of fiduciary duty claims must be dismissed).

**5. The State Common Law Claims**

Finally, TE Connectivity argues that the remaining state law claims must be dismissed with prejudice because they are preempted by ERISA.[5] (Docket Entry No. 6 at 16). There are two types of ERISA preemption: complete preemption under 29 U.S.C. § 1132(a) and conflict preemption under 29 U.S.C. § 1144(a). *Martinez v. Prudential Ins. Co. of Am.*, 594 F. Supp. 3d 827, 838 (S.D. Tex. Sep. 27, 2021).

"To determine whether ERISA completely preempts a state-law claim, the primary question is whether the state-law claim 'falls within the scope'" of § 1132(a). *Id.* at 838–39. "In other words, if an individual, at some point in time, could have brought his claim under [§ 1132(a)], and where there is no other independent legal duty that is implicated by the defendant's actions, then the individual's cause of action is completely pre-empted by" § 1132(a) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)). Meanwhile, § 1144(a) "preempts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" under ERISA. *Id.* (quoting 11 U.S.C. § 1144(a)). "Conflict preemption occurs 'if a two-prong test is satisfied: (1) The state law claims addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.'" *Id.* (quoting *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004).

TE Connectivity argues that the state-law claims are preempted because (1) they seek the same relief as the ERISA claims, which is payments under the benefits plan, and (2) they directly

[5] TE Connectivity only challenges the state-law claims on the grounds of preemption and does not distinguish between any of the three claims, nor does it address the pleading standards for any of the state-law claims. The court does not address any other aspects of the state-law claims at this time besides the over-arching preemption arguments.

affect the relationship among Kelly, TE Connectivity, and the Plan. (Docket Entry No. 6 at 16–17).[6] In response, Zenith asserts that its state law claims are not based on the denial of benefits but rather on TE Connectivity's misleading and incomplete representations in response to Zenith's call to verify coverage. (Docket Entry No. 9 ¶¶ 34–36). Zenith argues that under *Access Mediquip, LLC v. UnitedHealthcare Insurance Co.*, 662 F.3d 376 (5th Cir. 2011), these claims are not preempted, because the state law claims are based on "allegedly separate promises made by" an administrator "directly to" a provider. (*Id.* ¶ 36 (quoting *Access Mediquip*, 662 F.3d at 386)).

The state-law claims may proceed in part. ERISA "preempts third-party health care providers' derivative state-law claims alleging improper denial of a claim for plan benefits that would have the effect of modifying a plan's express terms." *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, Civ. Action No. H-05-4389, 2006 WL 2521411, at *5 (S.D. Tex. Aug. 29, 2006). To the extent that Zenith intends to prove its claims by showing that TE Connectivity improperly administered the Plan, those claims are completely preempted. *See id.*

But "ERISA does not preempt third-party healthcare providers' non-derivative state-law claims." *Id.* "A health care provider may . . . have both a valid assignment of its patient's rights and a direct claim arising under state law and can elect to assert either or both of those claims." *Center for Restorative Breast Surgery, L.L.C. v. Humana Health Benefit Plan of La.*, Civ. Action No. 10-4346, 2011 WL 1103760, at *2 (E.D. La. Mar. 22, 2011). In *Access Mediquip*, the Fifth Circuit stated that even if an insurer's statements regarding coverage were accurate, if those

[6] TE Connectivity also argues that courts "may and do" dismiss both ERISA claims and state-law claims, pointing to two out-of-circuit cases and a Fifth Circuit case that has been abrogated. (Docket Entry No. 11 at 16). Later Fifth Circuit precedent is more protective of third-party providers. *See Memorial Hosp. Sys.*, 904 F.2d at 428 ("We have held under different circumstances that ERISA preemption may occur even though ERISA itself could not offer an aggrieved employee a remedy for alleged misrepresentations. That principle should not be extended, however, to encompass third-party providers, particularly when doing so would run counter to one of Congress's overriding purposes in enacting ERISA.").

statements were "nevertheless misleading because [the insurance company's] agent's omitted to mention that, covered or not, [the third-party provider's] services would not be reimbursed," state law claims based on those misrepresentations are not preempted. 662 F.3d at 385. The Fifth Circuit also clarified—contrary to TE Connectivity's arguments otherwise—that "the relationship between the plan and third-party, non-ERISA entities who contact the plan administrator to inquire whether they can expect payment for services they are considering provided to an insured" is "not a domain of behavior that Congress intended to regulate with the passage of ERISA, which 'imposes no fiduciary responsibilities in favor of third-party health care providers regarding the accurate disclosure of information, or, indeed, regarding any other matter.'" *Id.* at 385–86 (quoting *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 247 (5th Cir. 1990)).

To the extent that Zenith's claims are based on independent misrepresentations to Zenith during the verification call that will not involve consideration of whether TE Connectivity properly administered the Plan, those claims are not preempted. *See Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 10-4346, 2014 WL 1276503, at *7 (E.D. La. Mar. 27, 2014) ("The parties do not contest that a service was actually covered by the ERISA plan; rather, they dispute whether the Center and St. Charles relied on Humana's alleged representations that it would pay them for a service as well as the amount they would be paid for the service. Accordingly, none of these claims depend on the terms of the ERISA plan. Thus, they do not relate to the plan nor do they involve a relationship like that among traditional entities."). And a provider's state-law claims are not preempted just "because it could recover an amount equal to the amount of benefits a patient could recover under the ERISA plan." *Id.*

As it did in *Ambulatory Infusion Therapy Specialists*, this court concludes that the issue of conflict preemption is best determined on a more developed record. 2006 WL 2521411, at *6 ("This court will convert the motion to dismiss the negligent misrepresentation and the promissory

estoppel claims on the basis of conflict preemption into a motion for summary judgment. The parties may conduct discovery limited to conflict preemption issues and supplement the record."); *see also Access Mediquip*, 662 F.3d at 378 (noting that ERISA preemption is an affirmative defense and at this stage, the court must construe the facts in the light most favorable to the non-moving party). Because TE Connectivity does not challenge the state-law claims besides a general argument as to preemption, the court does not address other aspects of these claims at this time.

## IV. Conclusion

The court grants in part and denies in part the motion to dismiss. The ERISA breach of fiduciary duty claim is dismissed. The remaining claims will proceed to summary judgment. The court sets a status conference for October 2, 2026, at 11:40 a.m. Central Time, via Zoom.

SIGNED on August 17, 2026, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge